961 F.2d 912
 Stephen B. ELLIS, Plaintiff-Appellant,
v.
Samuel SKINNER, in his official capacity as the Secretary,
United States Department of Transportation; Thomas D.
Larson, in his official capacity as the Deputy
Administrator, Federal Highway Administration, United States
Department of Transportation; Louis N. MacDonald, in his
official capacity as the Regional Administrator, Federal
Highway Administration; Eugene Findlay, individually and in
his official capacity as Director of the Utah Department of
Transportation; and Mario Blanco, individually and in his
official capacity as Civil Rights Coordinator, Utah
Department of Transportation, Defendants-Appellees.
 No. 91-4013.
 United States Court of Appeals,
Tenth Circuit.
 April 10, 1992.
 
 William Perry Pendley and Todd S. Welch, Mountain States Legal Foundation, Denver, Colo., on the briefs for plaintiff-appellant.
 Dee V. Benson, U.S. Atty., R. Paul Van Dam, Atty. Gen., State of Utah, Leland D. Ford, Asst. Atty. Gen., State of Utah, John R. Dunne, Asst. Atty. Gen., Dept. of Justice, Civil Rights Div., Washington, D.C., David K. Flynn and Thomas E. Chandler, Attys., Dept. of Justice, Civil Rights Div., Washington, D.C., for defendants-appellees.
 Before McKAY, Chief Judge, McWILLIAMS, Circuit Judge, and BROWN, District Judge.[1]
 McKAY, Chief Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Appellant Stephen Ellis appeals an order of the district court granting summary judgment in favor of the appellees. 753 F.Supp. 329. On appeal, Ellis raises three arguments. First, he contends that the district court erred in holding that the proper standard for decision is Fullilove v. Klutznick, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), rather than City of Richmond v. J.A. Croson, Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). Second, Ellis argues that the district court erred in holding that the Surface Transportation Assistance Act of 1982, Pub.L. No. 97-424, § 105(f), 96 Stat. 2097, 2100 (STAA) and the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100-17, § 106(c), 101 Stat. 132, 145 (STURAA), as applied to him by the Utah Department of Transportation (UDOT), are constitutional. Third, he asserts that the district court erred in holding that the UDOT was not required to make findings of past state-sponsored discrimination before implementing the disadvantaged business enterprise (DBE) program. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 BACKGROUND
 
 3
 Ellis, a white male landscape subcontractor, sought declaratory and permanent injunctive relief against officials of the federal Department of Transportation and UDOT on the ground that the federal DBE program as applied by the State of Utah violates the Equal Protection Clause of the Fourteenth Amendment. Both the appellant and the appellees filed cross motions for summary judgment with the district court. For purposes of the cross motions, the parties stipulated that the federal statutes and their implementing regulations are facially lawful and constitutional.
 
 
 4
 The DBE program established by STAA, and renewed by STURAA, requires states--as a prerequisite to the receipt of federal funds--to set aside at least ten percent of all federally aided highway contracts to DBEs. Federal regulations require each participating state to set annual goals for DBE participation. 49 C.F.R. § 23.64. The regulations permit a state to set its annual goal at less than ten percent DBE participation if the state can document its efforts to meet the statutory ten-percent requirement and can provide information justifying a lesser goal. Id. §§ 23.64, 23.65. The regulations also provide that once the state has set an annual goal, it must set levels of DBE participation for each project. Id. § 23.45(g). The state may award a project to bidders that fail to meet the project's DBE goal if the bidder can demonstrate its good faith efforts to obtain DBE participation. Id. § 23.45(h).
 
 
 5
 Utah has chosen to participate in the federal DBE program. For purposes of the summary judgment motion under review, the parties have stipulated that Utah's DBE plan "mirrors the federal statutory and regulatory structure in every significant respect."
 
 
 6
 Before ruling on the summary judgment motion, the district court found that Fullilove v. Klutznick, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980)--and not City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989)--governed this case. Accordingly, the district court concluded that neither the State of Utah nor UDOT was required to make the specific factual findings mandated by Croson in order to comply with the Equal Protection Clause of the Fourteenth Amendment. Further, the district court found that, pursuant to federal regulations, the State of Utah could seek a waiver of the ten-percent set aside only if it could demonstrate that it was unable to comply with the ten-percent requirement. Because Utah had been able to comply with the set-aside goal, the district court found that "requiring the State [of Utah] to seek a waiver would be a futile act." Therefore, the court granted summary judgment in favor of the appellees.
 
 DISCUSSION
 
 7
 This appeal turns on the question of whether the district court erred in applying the Supreme Court's decision in Fullilove instead of the Court's Croson decision to the facts of this case. Ellis asserts that the district court should have applied the rationale in Croson and required the State of Utah to make specific factual findings justifying its failure to seek a waiver of the ten-percent set-aside goal.
 
 
 8
 In Fullilove, the Supreme Court examined whether the minority business enterprise (MBE) provision of the Public Works Employment Act of 1977, Pub.L. No. 95-28, 91 Stat. 116 (PWEA) violated the Equal Protection Clause.[2] In rejecting a facial challenge to the constitutionality of the Act, the Court found that the remedial objectives of the legislation were within the enforcement power of Congress under section five of the Fourteenth Amendment. 448 U.S. at 478, 100 S.Ct. at 2774. Although Congress did not make specific "findings" of past discrimination in public procurement practices, the Court felt "satisfied that Congress had abundant historical basis from which it could conclude" such a finding. Id.
 
 
 9
 Most importantly for purposes of this appeal, the Court emphasized that the MBE program contained waiver and exemption provisions. Id. at 482, 487, 100 S.Ct. at 2776, 2779. A waiver provision allowed the grantee of a general contract to request a set-aside goal of less than ten percent upon "demonstration that, despite affirmative efforts, this [ten-percent] level of participation cannot be achieved without departing from the objectives of the program." Id. at 482, 100 S.Ct. at 2776. Because such a waiver provision created a method for rebutting the assumptions underlying the MBE program, the waiver provision was "significant" to the conclusion that the Act passed constitutional muster.[3]
 
 
 10
 In Croson, the Supreme Court examined a set-aside program enacted by the City of Richmond. The City of Richmond established a thirty-percent set aside for minority business enterprises on city construction projects. After the set-aside program had been established, Croson issued a plumbing subcontract bid to a general contractor hired to renovate the city jail. Only one MBE expressed interest in the plumbing subcontract and subsequently submitted an untimely bid that was more than $6,000 higher than Croson's bid. Croson filed a 42 U.S.C. § 1983 action after the city denied his request to waive the set-aside requirement.
 
 
 11
 Examining the thirty-percent set-aside program, the Court held that the City of Richmond's set-aside plan failed to pass constitutional muster under a strict scrutiny equal protection analysis. In reaching this conclusion, the Court distinguished the city's program from the PWEA, which was upheld in Fullilove. In a plurality opinion, Justice O'Connor noted that although states and municipalities have some power to remedy the effects of prior discrimination, 109 S.Ct. at 720, a program of a state or political subdivision is not entitled to the same deference as a congressional program because Congress, unlike the states, has special remedial power under the Fourteenth Amendment. Id. 109 S.Ct. at 719. Thus, in order for states or municipalities to enact affirmative action programs, the Croson Court required such entities to make specific findings of past discrimination sufficient to demonstrate a compelling governmental interest in apportioning public contract opportunities to minority businesses.
 
 
 12
 On appeal, Ellis contends that in order for Utah's implementation of the federal program to pass constitutional muster, Utah must comply with the stringent fact-finding requirements outlined in Croson. Essentially, Ellis argues that the State of Utah must justify its failure to seek an administrative waiver of the ten-percent set-aside goal by satisfying the fact-finding requirements of Croson.
 
 
 13
 To resolve this appeal, we must decide whether failure to seek an administrative waiver places this case squarely within the parameters of the Supreme Court's decision in Croson. We begin by emphasizing that Ellis, for the purposes of the summary judgment motion under review, stipulated that both the federal statutes and their implementing regulations are facially constitutional. On appeal, Ellis only contends that Utah's implementation of the federal plan--specifically Utah's failure to seek a waiver from the ten-percent annual goal--is unconstitutional. Therefore, we must decide whether Utah's failure to seek a waiver is equivalent to a local government enacting its own set-aside program, thus implicating the fact-finding requirements of Croson.
 
 
 14
 Our decision turns on the procedures for seeking and obtaining an administrative waiver. STAA and STURAA both contain a waiver provision whereby a state can petition the Secretary of Transportation for an annual DBE set-aside figure other than the standard ten-percent goal.[4] The regulations governing the procedure for obtaining an administrative waiver can be found in 49 C.F.R. §§ 23.64(e), 23.65, and 49 C.F.R. Part 23, Subpart D, Appendix D. Section 23.64(e) requires that a state take several steps to seek a waiver, including compliance with the requirements of § 23.65. Section 23.65 requires a state to include with its waiver request information justifying the state's entitlement to a set-aside goal of less than ten percent.
 
 
 15
 In its well-reasoned opinion, the district court found that "[o]ne clear import of this regulation [§ 23.65] is that in order for a state to obtain federal approval of a waiver request, the state must demonstrate that it has been unable to attain the 10% level." After reviewing § 23.65 and Appendix D, we agree. Appendix D specifies that
 
 
 16
 [t]he justification has two basic elements. First, the recipient should show that it is doing as much as it can to increase disadvantaged business participation to at least a ten percent level. Second, the recipient should show that, given the availability of disadvantaged businesses, the requested goal is the reasonable expectation for the level of disadvantaged business participation that these efforts are likely to obtain.
 
 
 17
 (Emphasis added.) Thus, § 23.65 clearly requires that a state demonstrate its inability to obtain a ten-percent level of participation by DBEs before it can qualify for a waiver of the ten-percent set-aside goal. In addressing this same issue, the Sixth Circuit stated:
 
 
 18
 Further, while it is true that Tennessee may opt not to participate in the federal program at all, if the state decides to accept highway funds, it must meet the 10% DBE requirement, or fulfill the federal requirements for a variance by showing 10% participation is not possible despite good faith efforts. In other words, and contrary to the plaintiffs' frequent assertions, Tennessee has no discretion to either accept the 10% DBE requirement or apply for a variance. Rather, it may only apply for a variance by establishing under federal standards that it cannot comply with the 10% requirement.
 
 
 19
 Tennessee Asphalt Co. v. Farris, 942 F.2d 969, 975 (6th Cir.1991); see also Milwaukee County Pavers Ass'n v. Fiedler, 922 F.2d 419 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2261, 114 L.Ed.2d 714 (1991).[5] Because it is undisputed that Utah has been able to meet the ten-percent DBE set-aside requirement, we follow the Sixth and Seventh Circuits and hold that Utah, given the federal regulations, would not be able to obtain a waiver of the ten-percent set-aside goal.
 
 
 20
 When Utah "fails" to seek a waiver, it simply follows the procedures set forth in the federal statute's implementing regulations. Moreover, because Ellis stipulated that these regulations are constitutional, we are compelled to conclude that the State of Utah is simply obeying a congressional command. We agree with the Seventh Circuit's analysis in Milwaukee County:
 
 
 21
 Insofar as the state is merely complying with federal law it is acting as the agent of the federal government and is no more subject to being enjoined on equal protection grounds than the federal civil servants who drafted the regulations.... If the state does exactly what the statute expects it to do, and the statute is conceded for purposes of the litigation to be constitutional, we do not see how the state can be thought to have violated the Constitution.
 
 
 22
 922 F.2d at 423; see also Tennessee Asphalt, 942 F.2d at 975 ("since 'Congress [can] mandate state and local compliance with [a] set-aside program under its § 5 power to enforce the Fourteenth Amendment,' Croson, 488 U.S. at 487, 109 S.Ct. at 718, a state's compliance with the mandates of a federal scheme is nothing more than compliance with federal law"). Thus, the Croson decision does not apply to this appeal, and the State of Utah is not required to make factual findings to justify its inability to seek a waiver of the ten-percent set-aside goal.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The Honorable Wesley E. Brown, District Judge for the United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 Similar to STAA and STURAA, the PWEA requires that, absent an administrative waiver, at least ten percent of federal funds granted for local public works projects must be used by the state or local grantee to procure services or supplies from businesses owned by minority group members
 
 
 [3]
 In his concurrence, Justice Powell also emphasized the importance of the waiver provision. See 448 U.S. at 514, 100 S.Ct. at 2793 (Powell, J., concurring)
 
 
 [4]
 Both parties agree that Utah has not requested a waiver from the annual 10% set-aside requirement
 
 
 [5]
 Plaintiff argues that a State is not to apply the ten-percent set-aside goal unless the State finds that the purposes of the STAA are directly applicable to it. This argument misconstrues the nature of Congress's statutory mandate. Contrary to plaintiff's characterization of the statutory DBE program, Congress affirmatively mandated that participating states meet the ten-percent requirement, but left open the possibility for an administrative waiver:
 Except to the extent that the Secretary determines otherwise, not less than 10 percent of the amounts authorized to be appropriated under [the Act] shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals.
 
 
 [101]
 Stat. at 145